**JUDGE CROTTY**

**Kauff McGuire & Margolis LLP**
950 Third Avenue, 14th Floor
New York, New York 10022
(212) 644-1010 (Tel)
(212) 644-1936 (Fax)
*Attorneys for Defendants*

# 13 CV 2319

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL HINES,

                                        Plaintiff,

                    – against –

MTV NETWORKS COMPANY a/k/a Viacom
Media Networks; and VIACOM, INC.,

                                        Defendants.

Index No. ____
**NOTICE OF REMOVAL**



        PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. §§ 1441 and 1446,

Defendants VIACOM MEDIA NETWORKS, a division of VIACOM INTERNATIONAL

INC. (erroneously sued as MTV Networks Company) and VIACOM, INC. (collectively

"Defendants") hereby respectfully notice removal of this action from the Supreme Court

of the State of New York, New York County ("NYS Supreme Court"), where it is pending,

to the United States District Court for the Southern District of New York. Defendants

remove this action on the basis of federal question jurisdiction pursuant to Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq* ("Title VII"). Defendants appear

solely for the purpose of removal and for no other purpose, reserving all other defenses

available to them. As grounds for removal, Defendants allege as follows:

## PROCEDURAL HISTORY

        1.      On or about February 12, 2013, Plaintiff Michael Hines commenced an

action in NYS Supreme Court, captioned *Michael Hines v. MTV Networks Company*

*a/k/a Viacom Media Networks; and Viacom, Inc.*, Index No. 151305-13 (the "State

Court Action"), in which he alleged claims for harassment and retaliation under the New York State Human Rights Law, the New York City Human Rights Law, and Title VII.

2.     A copy of all process, pleadings, and orders served upon Defendants in the action pending in NYS Supreme Court, consisting of Plaintiff's Summons, Verified Complaint and accompanying exhibits, is filed with this notice, annexed hereto at Exhibit 1.

3.     Plaintiff's Counsel, Jeffrey A. Barr, Esq., provided Defendants' counsel with the documents contained in Exhibit 1 on March 8, 2013.

4.     Defendants have not filed an Answer in the State Court Action.

### TIMELINESS OF REMOVAL

5.     Pursuant to 28 U.S.C. § 1446(b), Defendants have filed this Notice of Removal within thirty (30) days of their counsel's March 8, 2013 receipt of a copy of the Summons and Verified Complaint in the State Court Action.

### FEDERAL QUESTION JURISDICTION

6.     This is a civil action over which this Court has original jurisdiction, and one that Defendants may remove to this Court pursuant to 28 U.S.C. §§ 1331 and 1441.

7.     Plaintiff, who was employed by Defendants, alleges that he was subjected to harassment and retaliation in violation of, *inter alia*, Title VII. (*See* Verified Complaint, Exhibit 1.)

8.     The U.S. Equal Employment Opportunity Commission issued a Dismissal and Notice of Rights to Plaintiff dated October 17, 2012, annexed hereto as Exhibit 2.

9.     By reason of the foregoing, this Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331. This action, therefore, is removable to this Court pursuant to 28 U.S.C. § 1441.

10.     This Court also has supplemental jurisdiction over Plaintiff's claims under the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq*. and the New York City Human Rights Law, N.Y. Admin. Code, §8-101 *et seq*., because these related claims are part of the same case and controversy as Plaintiff's Title VII claims. *See* 28 U.S.C. § 1367.

## NOTICE TO STATE COURT

11.     Defendants will give written notice to Plaintiff of the filing of this Notice of Removal as required by 28 U.S.C. § 1446(d). A copy of this Notice of Removal will also be filed with the clerk of the NYS Supreme Court as required by 28 U.S.C. § 1446(d).

WHEREFORE, Defendants notice that this action, initially commenced in the NYS Supreme Court, shall proceed in this Court as an action properly removed to it.

Dated:  New York, New York
        April 8, 2013

Respectfully submitted,
KAUFF McGUIRE & MARGOLIS LLP

By: _____
        Michele A. Coyne, Esq.
        950 Third Avenue
        Fourteenth Floor
        New York, NY 10022
        (212) 644-1010 (Tel)
        coyne@kmm.com

*Attorneys for Defendants*

# Exhibit 1

| | |
|---|---|
| SUPREME COURT OF THE STATE OF NEW YORK | Date Index No. |
| COUNTY OF NEW YORK | Purchased: |

-------------------------------------------------------------------X

MICHAEL HINES,

                                  Plaintiff,

Index No.

Plaintiff(s) designate(s)
NEW YORK County as place
of trial based on his residence

            -against-

**SUMMONS**

MTV NETWORKS COMPANY a.k.a Viacom
Media Networks and VIACOM, Inc.

                            Defendants,

-------------------------------------------------------------------X

To the above named Defendant(s):

        You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, OR IF THE COMPLAINT IS NOT SERVED WITH THIS SUMMONS, to serve a copy of a notice of appearance, on the Plaintiff(s)' attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York). In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded herein.

        The basis of the venue designated is place of occurrence and residence of plaintiff.

        The nature of this action is for damages as a result of unlawful discrimination.

        This action seeks $1,000,000.00 in damages plus interest, costs and disbursements.

Dated: New York, New York
         January 30, 2013

                               **JEFFREY A. BARR**
                               By
                               Attorney for Plaintiff(s)
                               225 Broadway, Suite 3504
                               New York, New York 10007
                               (212) 227-1834

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------X
                                     :

MICHAEL HINES,                      :    Index No.

                           Plaintiff,   :

                                :

          - against -            :

                                :     <u>VERIFIED COMPLAINT</u>

MTV NETWORKS COMPANY a/k/a Viacom     :
Media Networks; and VIACOM, INC.,           :

                                :

                       Defendants.   :

                                :
----------------------------------------------------------------X

       PLAINTIFF MICHAEL HINES, by his attorney, complaining of the defendants, does allege as follows:

       1.     Plaintiff is a resident of the State of New York, County of New York.

       2.     Defendant MTV NETWORKS COMPANY a/k/a Viacom Media Networks ("MTV") is a division of defendant VIACOM, INC., which upon information and belief, is a corporation duly existing under the laws of the State of New York, with its principal place of business at 1515 Broadway, New York, NY ("defendants" or "the Company").

       3.     At all times mentioned herein, plaintiff was an employee of defendant MTV, commencing in November 2004 and continuing until May 2011.

       4.     Plaintiff was employed initially as an accounting services supervisor and latter was employed by defendants as a Supervisor of Financial Services.

       5.     Plaintiff at all times from November 2004 until May, 2011 was an exemplary worker and performed his job functions in an exceptional manner, and until November, 2010, consistently earning the highest job evaluations, performance reviews and earned merit and achievement bonuses.

6.   In or about April, 2010, in a discussion with his direct supervisor, Sheron Capers, plaintiff revealed that he needed to take vacation time at a time which would coordinate with his partner's schedule.

7.   Ms. Capers, who, upon information and belief, is a born-again Christian, seemed incredulous and demanded to know "since when do you live with a man"!

8.   Thereafter, Ms. Caper's attitude toward plaintiff changed.  She became critical and demeaning.

9.   Commencing in May, 2010 and continuing through August 2010, Ms. Capers, began a pattern of behavior which included preaching to plaintiff privately and publicly that homosexuality was not acceptable in the sight of Jesus and that plaintiff was going to go to hell for his evil ways.

10.   When plaintiff asked Ms. Capers to cease her sermonizing, and stated that he was not a Christian, Ms. Capers became even more dismissive and condescending.

11.   Ms. Capers began to criticize plaintiff's job performance and made false statements about plaintiff's work in company evaluations.

12.   Ms. Capers also deliberately increased Plaintiff's work load to the point where it exceeded the work of similar employees.

13.   Ms. Capers further created an environment which greatly enhanced the stresses of the workplace.

14.   Upon information and belief, Ms. Caper's actions were motivated by an intent to humiliate and demean and demoralize plaintiff for the sole reason that she perceived him to be homosexual.

15.   Plaintiff suffered emotional distress from the afore-mentioned actions.

16.   In August 2010, plaintiff brought the actions of Ms. Capers to the attention of Ms. Caper's supervisors, Susan Tinkler-Muller and senior vice president Lorraine Nicholson (a.k.a Lori Nicholson).

17.   Both the Senior Vice President and the Manager promised to devise a method of addressing the hostile work environment created by the afore-mentioned interactions with Ms. Capers.

18.   In fact, Ms. Muller and Ms. Nicholson took no such remedial action.

19.   Instead, upon information and belief, after consulting with Ericka Wright Tomlinson of the company's Human Resources department, Susan Muller determined that the easiest way of handling the matter was to create a false disciplinary record regarding plaintiff and to fire him.

20.   In order to accomplish this goal, they had plaintiff assigned to Jerome G., another manager, in a department which had not previously overseen the type of work plaintiff had been performing under Ms. Capers.

21.   Upon information and belief, Jerome G. was known within the Company to be openly gay.

22.   Upon information and belief, Jerome G. was given instructions by senior management, including Susan Tinkler-Miuller and by personnel in the Human Resources department, including Gil Benbrook and Ericka Wright-Tomlinson, to find a reason to terminate Plaintiff.

23.   Upon information and belief, under instructions from H.R., Ms. Muller and Mr. G,  falsely informed H.R. that plaintiff had failed to perform certain tasks.

3

24.   Upon information and belief, Ms. Tomlinson manipulated the false statements concerning plaintiff's work performance and forwarded such statements to Nicholson, who in April, 2011 agreed to terminate plaintiff's employment.

25.   Upon information and belief, Ms. Tomlinson sent an email on or about April 4, 2011 to Ms. Tinkler-Muller advising her that the "saga" was almost over because she had finally obtained consent from Nicholson to terminate Plaintiff's employment.

26.   On or about April 27, 2011, plaintiff was called into the H.R. department and was asked to resign.

27.   On April 27, 2011, Mr. G sent an email message to Susan Tinkler-Muller and Ericka Wright-Tomlinson, and others, congratulating them for their clever work in getting plaintiff to resign.

28.   In or about October, 2011, plaintiff filed a complaint with the New York State Division of Human Rights.

29.   After an investigation, the New York State Human Rights Commission found probable cause to justify a hearing into plaintiff's allegations. A true and correct copy of the finding of probable cause is annexed hereto as Exhibit A.

30.   In or about July, 2012, plaintiff obtained an order from the NYSDHR nullifying his election of remedies.

31.   By virtue of the foregoing, plaintiff has suffered damages in the form of lost wages, loss of promotion, and emotional distress.

AS  AND FOR A FIRST CAUSE OF ACTION
(EXECUTIVE LAW 15  SECTION 290 et seq.)

32.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 31 as if set forth fully herein.

33.    By virtue of the foregoing, defendants have violated the New York State Human Rights Law, by creating and permitting a hostile work environment by a pattern of continuous and pervasive behavior which changed the terms and conditions of plaintiff's employment.

34.    By virtue of the foregoing, defendants retaliated against plaintiff for calling to their attention the discriminatory and unlawful actions of Ms. Capers.


AS  AND FOR A SECOND CAUSE OF ACTION
(NEW YORK CITY HUMAN RIGHTS LAW
Administrative Code  § 8-101 et seq.  )

35.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 31 as if set forth fully herein.

36.    By virtue of the foregoing, defendants have violated the New York City Human Rights Law, by creating and permitting a hostile work environment by a pattern of continuous and pervasive behavior which changed the terms and conditions of plaintiff's employment.

37.    By virtue of the foregoing, defendants retaliated against plaintiff for calling to their attention the discriminatory and unlawful actions of Ms. Capers.

AS  AND FOR A THIRD CAUSE OF ACTION/CLAIM FOR RELIEF
(CIVIL RIGHTS ACT OF 1964, TITLE VII, 42 U.S.C. § 2000e et seq.)

38.   Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 31 as if set forth fully herein.

39.   By virtue of the foregoing, defendants have violated the Civil Rights Act of 1964, by creating and permitting a hostile work environment by a pattern of continuous and pervasive behavior which changed the terms and conditions of plaintiff's employment.

40.   By virtue of the foregoing, defendants additionally retaliated against plaintiff for calling to their attention the discriminatory and unlawful actions of Ms. Capers.

WHEREFORE, Plaintiff demands judgment, awarding him compensatory damages, including but not limited to Lost Wages, damages for Emotional Distress, Punitive Damages

--       On the FIRST CAUSE OF ACTION, in an amount to be proven at trial, but not less than $1,000,000.00;

--       On the SECOND CAUSE OF ACTION, in an amount to be proven at trial, but not less than $1,000,000.00;

--       On the THIRD CAUSE OF ACTION, in an amount to be proven at trial, but not less than $1,000,000.00;

6

Plus COUNSEL FEES and any necessary and appropriate injunctive

relief, plus such other and further relief, as to the court seems just and proper.

Dated: New York, NY
        January 30, 2013

                              JEFFREY A. BARR
                              By:
                              Attorney for Plaintiff
                              225 Broadway, Suite 3504
                              New York, NY 10007
                              (212) 227-1834

<u>VERIFICATION</u>

STATE OF NEW YORK          )
                           )  ss.
COUNTY OF NEW YORK         )

MICHAEL HINES, being duly sworn deposes and says:

1. I am the plaintiff herein; I have read the foregoing VERIFIED COMPLAINT and the same is true to the best of my knowledge except as to matters asserted on information and belief, and as to those matters, I believe it to be true.

_____
MICHAEL HINES

Sworn to before me this
30th day of January, 2013

_____
notary public

**JEFFREY A. BARR**
No. 02BA4799670
Qualified in New York County
Certificate Filed in New York County
My Commission Expires 01/31/2014

8

EXHIBIT A



**ANDREW M. CUOMO**
GOVERNOR

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

MICHAEL HINES,

                        **Complainant,**

v.

VIACOM MEDIA NETWORKS,

                        **Respondent.**

**DETERMINATION AFTER
INVESTIGATION**

Case No.
10151674

---

Federal Charge No. 16GB200481

On 10/31/2011, Michael Hines filed a verified complaint with the New York State Division of Human Rights ("Division"), charging the above-named Respondent with an unlawful discriminatory practice relating to employment because of creed, sexual orientation, opposed discrimination/retaliation in violation of N.Y. Exec. Law, art. 15 ("Human Rights Law").

After investigation, the Division has determined that it has jurisdiction in this matter and that <u>PROBABLE CAUSE</u> exists to believe that the Respondent has engaged in or is engaging in the unlawful discriminatory practice complained of.

Pursuant to the Human Rights Law, this matter is recommended for public hearing. The parties will be advised of further proceedings.

Dated:      **MAY 0 1 2012**

      New York, New York

                    STATE DIVISION OF HUMAN RIGHTS

By:      *David E. Powell*
               David E. Powell
               Regional Director

TO:
Complainant
Michael Hines
162 West 80th Street, Apt. 5C
New York, NY 10024

Complainant Attorney
Jeffrey A. Barr, Esq.
225 Broadway Suite 3504
New York, NY 10007

Respondent
Viacom Media Networks
Attn: Shanell Parrish-Brown, Esq.
35 Adams Avenue
Hauppauge, NY 11788

Respondent Attorney
Michele A. Coyne, Esq.
Kauff, McGuire & Margolis, LLP
950 Third Avenue, 14th Floor
New York, NY 10022

# NEW YORK STATE

# DIVISION OF HUMAN RIGHTS

TO:     Files                                              REGION: Upper Manhattan

FROM:  David E. Powell                                    DATE:   MAY 0 1 2012
        Regional Director

SDHR CASE NO: 10151674-11-E-COI-E

Federal Charge No. 16GB200481

SUBJECT:   Michael Hines v. Viacom Media Networks

---

## FINAL INVESTIGATION REPORT AND BASIS OF DETERMINATION

### I.     CASE SUMMARY

This is a verified complaint filed by complainant, Michael Hines, on Mon 10/31/2011. The complainant, who is non-Christian, perceived to be gay, and opposed discrimination, charges the respondent with unlawful discriminatory practices in relation to employment because of creed, sexual orientation, opposed discrimination/retaliation.

### II.    SUMMARY OF INVESTIGATION

Complainant's Position:

The Complainant stated that he was employed with the Respondent from November 1, 2004 to May 11, 2011. He stated that his duties were in the accounts payable department; vendor relations; and Amex Administrator and Purchasing. The Complainant stated that he worked long hours and was recognized as a diligent and conscientious employee. The Complainant stated that he was rewarded for his hard work with public accolades and letters and commendations from senior management, vendors, colleagues and his superiors.

The Complainant stated that he has always been discrete about his personal life.

The Complainant stated that on or about April 27, 2010, in a discussion with Sheron Capers, a supervisor in the accounts payable department, regarding his specific vacation dates request, the Complainant mentioned that his domestic partner Jesse could only go on vacation on the requested dates. The Complainant stated that Ms. Capers insisted that she needed to know who Jesse was. The Complainant stated that when he told her that Jesses was the man he had lived with for the past five years, at first she seemed incredulous. The Complainant stated that Ms. Capers then became

judgmental and disapproving.

The Complainant stated that from April 2010 forward, Ms. Capers' attitude toward him, which had previously been respectful and friendly, was distant. The Complainant stated that Ms. Capers began to criticize his work to his superiors at every opportunity and to assign tasks in a manner calculated to make his work load unmanageable.

The Complainant stated that she began mentioning the Bible in practically every conversation. He stated that from April 2010 until August 2010, she proselytized to him privately and in front of others indicating that the Bible did not approve of his perceived lifestyle.

The Complainant stated that in August, he informed Ms. Capers that he was not a Christian and was not receptive to her preaching. He stated that she reacted to this statement in an extreme manner.

The Complainant stated that in August 2010, he told his superiors Susan Tinkler-Muller and Lorraine Nicholson about the harassment and bullying from Ms. Capers, and they promised to do something about it. The Complainant stated that since that time Susan Tinkler-Muller and Lorraine Nicholson, themselves began to criticize his work.

The Complainant stated that Ms. Tinkler-Miller and Ms. Nicholson turned the matter over to the Human Resources department. The Complainant stated that he had a meeting in November 2010 with Human Resources where he mentioned the harassment. The Complainant stated that Human Resources asked Ms. Tinkler-Muller if the Complainant had reported this to her and senior management. The Complainant stated that Ms. Tinkler-Muller admitted that he had begun reporting the harassment to her and to Ms. Nicholson in August 2010.

The Complainant stated that on December 9, 2010, Human Resources devised a plan to have the Complainant supervised by an openly gay employee instead of Ms. Capers and Ms. Tinkler-Muller. The Complainant stated that the openly gay employee was supposed to supervise his work, and in weekly meetings, constructively criticize his performance. The Complainant stated that no such sessions ever occurred. Instead, the Complainant stated that the openly gay employee told him that he was just waiting to retire and get out of that oppressive and hostile work environment himself.

The Complainant stated that in April 2011, he was called into Human Resources and told that since he was apparently not happy, his employment was being terminated. The Complainant stated that rather than address the harassment and bullying he was enduring from Ms. Capers, Human Resources was called in by management to create a basis for removing him from the company.

Respondent's Position:

On December 22, 2011, the Respondent provided the Division with a written position statement. Relevant portions have been excerpted below.

The Respondent stated that Capers adamantly denies ever taking any discriminatory action, or engaging in any harassing conduct, toward Hines based on his lack of religious belief or his sexual orientation.

The Respondent stated that the Complainant's issues with Capers arose after Capers returned from a medical leave of absence, during which the Complainant took advantage of the lack of direct

- 2 -

management oversight. Once Capers returned front her leave, the Complainant vehemently resisted having to report to Capers about his business activities and whereabouts.

The Respondent stated that at the same time, longstanding issues in the Complainant's performance became more apparent to Capers' supervisors, leading to the Complainant being placed on a Performance Improvement Plan (PIP).

The Respondent stated that the Complainant's employment was only terminated after he failed to meet the performance expectations for his position, even after receiving extensive feedback and coaching from his management.

The Respondent stated that the Complainant's termination was based on well-documented performance problems raised by a subsequent manager (who is openly gay), not by Capers.

The Respondent stated that the Complainant was hired on November 1, 2004 as an Accounting Services Supervisor in the Accounts Payable department, reporting to Capers. Capers has been employed by the Company and its predecessors for nearly 25 years and has never been the subject of any complaints of discrimination, harassment or retaliation.

The Respondent stated that the Complainant had a positive relationship with Capers for many years.

The Respondent stated that, generally speaking, the Complainant performed adequately in his role during the early stages of his employment. The Respondent further stated that the Complainant tended to become overly emotional and to react negatively to the slightest perceived criticism. The Respondent stated that the Complainant had strained relationships with some of his peers because of his reactionary personality. The Respondent stated that the Complainant also had a habit of over-complicating routine business matters and sending lengthy and convoluted email messages.

The Respondent stated that Capers took a medical leave of absence in June and July 2010. The Respondent stated that during Capers' leave of absence, the Complainant took advantage of the opportunity to gain further autonomy. He requested, and was granted, a laptop and a Blackberry to perform his duties from home. The Respondent stated that the Complainant also began keeping his own hours — coming and going from the office when he wanted and leaving during the work day.

The Respondent stated that once Capers returned from leave, the Complainant quickly became annoyed and frustrated with again being subjected to Capers' oversight. The Complainant's discontent with Capers' legitimate management oversight came to a head on August 4, 2010. On that day, the Complainant exploded in anger at Capers after she suggested that he not pressure his work colleagues to compliment him. After which, Capers notified Lori Nicholson (EVP, Financial Services) and Susan Tinkler-Muller (VP, Financial Services) of the incident. The Respondent stated that the Complainant then met with Nicholson to discuss his frustration with what he viewed as Capers micro-managing him. While Nicholson noted that it was appropriate for Capers' to manage the Complainant's work and inquire concerning his whereabouts during the business day, Nicholson also told the Complainant that she would meet with Capers and speak to her about his view that she was micro-managing him. Thereafter, Nicholson met with Capers and Muller and encouraged them to give the Complainant a bit more independence.

The Respondent stated that during Capers' leave of absence, Muller informally assumed Capers' management responsibilities. As a result, Muller had a greater opportunity to observe the

Complainant's performance than had previously been the case.

The Respondent stated that in or about September 2010, due to an unrelated business issue, Nicholson also worked more closely with the Complainant than in the past. The Respondent stated that both Muller and Nicholson became aware of problems in the Complainant's performance.

The Respondent stated that the PIP provided Hines with a thirty (30 day period to improve) but noted that failure to make significant and sustained improvement could lead to further disciplinary action, including termination of employment.

The Respondent stated that during the meeting with Erich Wright-Tomlinson (Vice President, Human Resources) and Muller to discuss the PIP, the Complainant became very emotional and claimed the PIP was full of lies. The Complainant also made a comment to the effect, "Sheron (Capers) doesn't like gay people." This was the first time that the Complainant had made such an allegation. The Respondent stated that when Wright-Tomlinson attempted to follow up on this serious allegation, the Complainant said he needed a moment to gather himself. The Respondent stated that the Complainant left the meeting and those present agreed to reconvene. The Respondent stated that when the meeting reconvened, the Complainant retracted his allegation against Capers, saying that she is a good person. The Respondent stated that at no time during this meeting did the Complainant claim that Capers had discriminated against him or harassed him because of his lack of religious belief and he did not reassert his allegation that Capers was biased against homosexuals.

The Respondent stated that shortly after the Complainant was issued the PIP, the Complainant's reporting structure was changed so that the Complainant now reported to Jerry Guardino (Director, Procurement).

The Respondent stated that considering the Complainant's unhappiness with Capers' management style, Nicholson hoped that implementing the change in reporting structure quickly would prove to be a positive change for the Complainant.

The Respondent stated that the Complainant referred to his new manager, Guardino, only as the "openly gay employee." The Respondent stated that Guardino is, in fact, openly gay; Guardino reports to Gil Benbrook, who is also openly gay. However, neither Guardino nor Benbrooks', sexual orientation had anything to do with the change in reporting structure.

The Respondent stated that Guardino denies making any comment, as alleged in the complaint, to the effect that he was "just waiting to retire" or referring to an "oppressive and; hostile work environment" at VMN.

The Respondent stated that Guardino, who had not been involved in prior evaluations of the Complainant's performance, quickly concluded that the Complainant's performance was subpar. Indeed, despite the fact that Guardino spent hours working with the Complainant, the Complainant's performance continued to be deficient.

The Complainant stated that Guardino noted that he had spent hours dealing with the Complainant on matters about which the Complainant should have been knowledgeable considering the years he had spent in his position.

The Respondent stated that Guardino noted that while Hines' lengthy and tedious emails had

- 4 -

improved, the Complainant still did not ask the correct questions in emails in order to get the desired information; "has an issue with paper;" and had continued issues with time management.

The Respondent stated that Guardino summed up his concerns by noting that when the Complainant did improve, his improvement was not sustained and that Guardino's ability to manage his groups was disrupted by having to spend so much time on the Complainant's issues. The Respondent stated that based on Guardino's recommendation, and after consultation with Human Resources, Nicholson made the decision to terminate the Complainant's employment on April 27, 2011. The Respondent reiterated that Capers was not involved in this decision.

The Respondent stated that even if the Complainant's allegations of being harassed on the basis of his religion are true, which Respondent asserts they are not, his allegations fall far short of setting forth a claim of religious harassment. The Respondent alleged that the Complainant does not allege, as he must, that Capers made derogatory remarks about his own beliefs or that she coerced him into religious activity. The fact that Capers may have made reference to her own religious belief — such as referring to herself as "blessed" is not abusive or derogatory to Complainant.

The Respondent stated that the Complainant's claim of sexual orientation discrimination is also without merit. The Respondent stated that the first time that the Complainant alleged that Capers held discriminatory views of homosexuals was during the meeting at which the Complainant was presented with the PIP, and after both, Muller and Nicholson had observed the Complainant's performance problems.

With regard to the Respondent's allegation of retaliation, the Respondent stated that because the criticism of the Complainant's performance pre-dated his allegation of sexual orientation discrimination, it could not have been in retaliation for the allegation. The Respondent reiterated that it was Guardino who recommended the Complainant's termination, not Capers.

Investigator's Observations:

On January 17, 2012, the Complaint's attorney provided the Division with a written rebuttal to the Respondent's written position statement. Relevant portions have been excerpted below.

The Complainant stated that the Respondent purports to show that the Complainant, an employee with an exemplary record, suddenly, in the last months of his employment, developed performance issues. The Complainant stated that the Respondent seeks to document this with a few emails, a copy of an apparently aborted Performance Improvement Plan ("PIP") and portions of a memo prepared by Jerome Guardino, and written for the specific purpose of providing a written basis for terminating Complainant's employment. The Complainant stated that the Respondent has attempted to "cover-up and whitewash" the decision to terminate the Complainant because his experience of religious and sexual orientation discrimination at the hands of Sheron Capers was something that would embarrass and could potentially have resulted in the termination of the positions of Lorraine Nicholson the Executive Vice President of Financial Services, Susan Tinkler-Muller, V.P. of "Power of One", as well as Ms. Capers.

The Complainant stated that for a significant period of time, from the moment Sheron Capers discovered that the Complainant lived with another man in a domestic relationship (April 2010), she constantly told him that God did not approve of his conduct and that he would, in essence, burn in hell and that he was not living up to his responsibilities as a Christian.

The Complainant stated that once, when the Complainant tried to inform Ms. Capers that he was not in fact a Christian, she became irate and in the lobby of a corporate office building and in full public view, screamed at him and publicly humiliated him, uttering "what do you mean you are not a Christian!"

The Complainant's recitation of Ms. Capers' religious and sexual preference bigotry is detailed in a December 9, 2010 memo which the Complainant sent to Ms. Muller, Ms. Nicholson as well as Human Resources, to refute the false record purportedly created by the P.I.P.

The Complainant stated that when Ms. Capers' persistent preaching, belittling and constant intimidation were initially disclosed to Ms. Nicholson and Ms. Muller in August 2010, they assured the Complainant that they would address the situation.

The Complainant stated that in the period from August through December 9, 2010, Ms. Capers continued to berate and intimidate the Complainant for not being Christian enough. The Complainant further stated that Ms. Capers continued to unfairly criticize the Complainant's work and make unreasonable and improper demands with respect to his work assignments.

The Complainant stated that the Respondent's claim that Ms. Capers was out of the picture after September, 2010 is simply false, and that the Complainant has provided memos documenting Ms. Capers' continued management.

The Complainant stated that on November 29, 2010, Ericka Wright Tomlinson, a VP in the Human Resources Department, was informed of the Complainant's complaints of discrimination based on religion and sexual orientation. The Complainant stated that at this time Ms. Muller admitted to Ms. Tomlinson that the Complainant had previously complained about this behavior to both her and to Ms. Nicholson in August 2010.

The Complainant stated that after receiving the Complainant's December 9, 2010 memo contesting the basis for the P.I.P., it was decided to transfer him to a "gay-appearing" supervisor, Mr. Guardino. The Complainant stated that the Respondent's evaluations show that the Complainant's performance at all times exceeded expectations, until Ms. Capers learned that his religion and lifestyle varied from hers.

On April 10, 2012, the investigator interviewed the Complainant over the telephone. Relevant portions have been excerpted below.

The Complainant said that he and Ms. Capers had a good working relationship until she learned that he was gay on April 27, 2010. The Complainant stated that Ms. Capers confronted him in front of co-workers, stating, "You're not a Christian, since when?" He stated that she called him a "back-slider", and told him that he needed to "get right with the Lord."

The Complainant stated that he spoke with Susan Tinkler –Muller and Lorraine Nicholson about the harassment the Complainant believes he was subjected to because of his creed and sexual orientation.

The Complainant stated that approximately 10 people who worked under Ms. Capers supervision, and to his knowledge, there were not any other gay and "out" employees working under Ms. Capers supervision.

The Complainant stated that former employee of the Respondent, Bilge Karacam, filed a complaint of discrimination based on her creed and sexual orientation. The Complainant stated that he was not sure what exactly Ms. Karacam told Human Resources. He stated, however, that Ms. Capers had been unreasonably hard on Ms. Karacam. He stated that Ms. Capers picked on Ms. Karacam and found issue with her work, until Ms. Karacam eventually resigned.

The Complainant stated that he does not know of anyone else who filed a complaint of discrimination.

Over the course of the investigation, a few of the Complainant witnesses were interviewed. Relevant portions have been excerpted below.

On April 26, 2012, the investigator interviewed Mr. Eruscianelli, who is no longer employed with the Respondent. Mr. Eruscianelli stated that he did not have any information about the Complainant's particular situation. However, he stated that he did know of an employee who had been in a similar situation with the Respondent. He stated that he knew of an employee, Shannon Burke, who was retaliated against after reporting to the Respondent that she had been sexually harassed. He stated that when Ms. Burke reported the sexual harassment, the person whom she accused of harassing her was terminated, but Lori Nicholson and Vicki then commenced retaliating against her for complaining. He stated that Ms. Burke finally quit.

On April 27, 2012, the investigator received an email from Ms. Karacam. Relevant portions have been excerpted below. In her email Ms. Karacam stated that during her first interview with Ms, Capers, Ms. Capers questioned her about her religious beliefs. Ms. Karacam, who is Muslim, stated that she intentionally did not inform Ms. Capers that she was Muslim, but did tell her that she believed "the God". Ms. Karacam stated that Ms. Capers was very open about her religious beliefs. Ms. Karacam stated that after working for the Respondent for one week, Ms. Capers had informed Ms. Karacam that she [Ms. Capers] was "a good Christian", sang in the choir of her church, and had painted a room black in her home for the purposes of reading her bible. Ms. Karacam stated that Ms. Capers invited her to her church, at which time Ms. Karacam admitted that she was Muslim. Ms. Karacam stated that when Ms. Capers learned that she was Muslim, and not Christian, Ms. Capers got very upset. Ms. Karacam stated later on that same day she heard Ms. Capers say to another employee, "I found out something terrible about her [Ms. Karacam]." Ms. Karacam stated that Ms. Capers' attitude toward her changed, after learning that Ms. Karacam was Muslim. Ms. Kacaram stated that on one occasion Ms. Capers complained to her about the Complainant, stating that she regretted hiring him because he was gay.

Another witness stated Ms. Capers felt very strongly about her religion, and that this was something that everyone understood. This witness further stated that Ms. Capers was quite vocal about her religion.

Review of documents provided by the Respondent revealed numerous years of the Complainant self-evaluations, and one Respondent-generated performance evaluation, 1/1/10 – 9/30/10. The investigation revealed that the Respondent provided statement after statement of the Complainant's own self-assessment in order to make a case for his termination, in addition to presenting the 2010 performance evaluation which is referenced above, in which the Complainant received a rating of "Development Needed". Review of documents provided by the Complainant revealed that the Complainant's Respondent-generated performance evaluation for 1/1/09 through 12/31/09 received a rating of "Exceeds Expectations".

The investigation further revealed that Sheron Capers evaluated Complainant on both of the above mentioned performance evaluations. The investigation further revealed that between the writing of those two evaluations, Ms. Capers allegedly learned of the Complainant's sexual orientation, and the Complainant allegedly reported the discrimination.

Submitted by: _____
Hellura Lyle
Human Rights Specialist I

## III.  BASIS FOR DETERMINATION

There are material factual disputes between the parties which are best resolved at a public hearing. These disputes include Respondent's claim that the Complainant's performance was less than satisfactory. Respondent indicated that Complainant had performance problems that pre-dated his claim of sexual orientation discrimination. Complainant contends his performance was good but that problems arose after Ms. Capers learned his creed and sexual orientation. The Respondent stated that Capers adamantly denies ever taking any discriminatory action, or engaging in any harassing conduct, toward Complainant based on his lack of religious belief or his sexual orientation. However, a witness stated that she experienced harassment from Ms. Capers after Ms. Capers learned of her creed. This witness was compelled to resign due to the treatment to which she was subjected by Ms. Capers. Another witness stated that Ms. Capers felt very strongly about her religion and was quite vocal about the same. The Respondent admitted that Complainant stated in a meeting that Ms. Capers does not like gay people; however, Respondent claimed Complainant later said that she was a good person. These statements appear to be at odds with one another. Shortly after this meeting, the Complainant was terminated for his alleged failure to improve upon his performance.

A hearing is required in which both parties will have a full opportunity to present their positions before an administrative law judge. After a record has been made at a public hearing, the Commissioner of Human Rights will be in a position to determine whether Respondent discriminated against Complainant due to his creed and sexual orientation, and if he was retaliated against for opposing discrimination.

Reviewed & Approved: _____
Janne Linares
Human Rights Specialist II

## IV.  DETERMINATION

Based on the foregoing, I find Probable Cause to support the allegations of the complaint.

David E. Powell
Regional Director

- 8 -



ANDREW M. CUOMO
GOVERNOR

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

MICHAEL HINES,

Complainant,

v.

VIACOM MEDIA NETWORKS, MTV NETWORKS
NOC,

Respondent.

AMENDMENT TO
THE COMPLAINT

Case No.
10151674

Federal Charge No. 16GB200481

Pursuant to the provisions of § 297.4a of the Human Rights Law (Executive Law, Article 15) of the State of New York, and the New York State Division of Human Rights, Rules of Practice § 465.4, the complaint in the aforesaid proceeding is amended as follows:

The respondent name shall be amended as follows: Viacom Media Networks

Dated:   MAY 0 1 2012
New York, New York

STATE DIVISION OF HUMAN RIGHTS

By:   *David E. Powell*

David E. Powell,
Regional Director

Index No.

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF New York**

MICHAEL HINES,

                    Plaintiff,

-  against -

MTV NETWORKS COMPANY a/k/a
Viacom Media Networks;  and
VIACOMM, INC.;

                    Defendants..

**SUMMONS AND COMPLAINT**

**JEFFREY A. BARR, ESQ.**
**BY:**

225 BROADWAY SUITE 3504
NEW YORK, NEW YORK 10007
(212) 227-1834
ATTORNEY FOR
Plaintiff

# Exhibit 2

EEOC Form 161 (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To:  **Michael Hines**
     **162 West 80th Street, Apt. 5C**
     **New York, NY 10024**

From:  **New York District Office**
       **33 Whitehall Street**
       **5th Floor**
       **New York, NY 10004**

|   | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16G-2012-00481 | **Holly M. Woodyard,** Investigator | **(212) 336-3643** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[X] Other *(briefly state)*        **Charging Party wishes to pursue matter in Federal District Court.**

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

**Kevin J. Berry,**
**District Director**

October 17, 2012

*(Date Mailed)*

Enclosures(s)

cc:

**VIACOM MEDIA NETWORKS**
**Attn: Shanell Parrish-Brown, Esq.**
**35 Adams Avenue**
**Hauppauge, NY 11788**

**Jeffrey A. Barr, Esq.**
**Law Office**
**225 Broadway, Suite 3504**
**New York, NY 10007**